COMMONWEALTH *vs.* GEORGE GUIDRY. April 17, 1986. *Rape. Witness*, Expert. *Evidence*, Rebuttal.

George Guidry, aged 25 at the time of trial, appeals from a judgment of conviction of the rape on October 30, 1982, of an eighteen year old woman. He claims that the trial judge erred in permitting the prosecutor to put certain questions to a physician who examined the woman shortly after the episode, and, again, in permitting the prosecutor to recall the woman, after the defense had put in its case, to give testimony by way of rebuttal. We refer to the contents of the record as far as may be needed to provide background for these legal questions.

The young woman, testifying for the Commonwealth, said she met the defendant at a party; a considerable time later allowed him to give her an innocuous short lift to her house; and saw him finally on the evening of October 29, 1982, at Bert's, a neighborhood bar in Lawrence where she had gone with friends. After mild demur, she allowed him to kiss her. She accepted his offer to drive her home. Some kissing resumed in his parked car. Then the defendant, according to the witness, drove to a secluded spot where he choked and raped her. She felt a "ripping pain" as he penetrated her.

The defendant, testifying in his own behalf, admitted the intercourse in the early morning of October 30, but said the woman consented. He described various dates with the woman after their first meeting at the party. On the evening of October 29 at Bert's, he said, they had kissed and hugged at the bar for perhaps an hour, and continued their intimacy for another thirty minutes in his parked car outside Bert's. Then, with no protestation on the woman's part, he drove to a Ryder Rent-a-Truck lot where, after cunnilingus, he engaged with her in vaginal intercourse. She was fully consenting. She had asked whether he had a contraceptive, and when he said no, she asked him not to ejaculate inside her. Nevertheless, he did so. This enraged her. (The resentment, it was intimated, might account for her accusation of rape, which he denied.)

---

At 3:00 A.M. the woman was brought to the Bon Secour Hospital in Methuen. Dr. Andrew Mitchell and staff administered the usual procedures for victims of alleged rape.

1. Dr. Mitchell testified that he found no evidence of trauma on the woman's neck; if pressure had been extreme, it would have left a mark, if moderate, it would not. Pelvic examination revealed a small bruise in the posterior part of the vagina, with swelling and a trace of blood (menstrual blood would not be similarly positioned).[1] The condition could have been caused by blunt trauma within the previous several hours.

The prosecutor asked whether the condition thus described was consistent with intercourse "by force and against her will"; over objection, the answer was yes. Evidently the prosecutor "lost" the answer; he attempted to repeat the question. After discussion at the sidebar, the judge allowed the prosecutor to have the question again, but limited to "by force"; there was objection; overruled; answer, yes. In cross-examination, the defendant drew from the witness that the condition was consistent as well with forceful as with forcible intercourse. We think that this was the sense in which the jury would understand the testimony.

It would have been wiser for the questioning to stick to "force" throughout, without implicating anything about the woman's reaction. Still we think the questioning taken as a whole was within fair bounds. "Consistent" was not used here to convey slyly to the jury a more positive meaning. The physican was saying that the physical manifestations were consistent with force, the woman consenting to intercourse, or with force used to overcome resistance to intercourse. The former alternative involved no criminality. See the treatment of "consistent" in *Commonwealth* v. *Howard*, 355 Mass. 526, 530-531 (1969); *Commonwealth* v. *Montmeny*, 360 Mass. 526, 527-529 (1971). In no way was the witness relying on matters outside the sphere of his expertness and within the jury's competence, such as the veracity of the woman's story of abuse. Compare *Commonwealth* v. *Gardner*, 350 Mass. 664, 665-667 (1966); *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 402-404 (1985). The opinion was not rendered inadmissible simply because it approached the issue of rape upon which the jury had ultimately to pass. See *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982).

2. The defense called Jeanette Pelletier who testifed that in telling her of the rape, the woman said the defendant had threatened her with a knife. This was received as a reported statement by the woman inconsistent with her testimony that the defendant had choked her (without mention of a knife). The defendant gave testimony — here we elaborate somewhat on our summary statement above — that he and the woman were much better acquainted before the episode in suit than the woman had allowed under questioning by the prosecution. He said he had dated her and taken her on

---

[1] The woman's jeans and pantyhose (received as exhibits) were bloodied. However, the defendant testified that the woman had shed both garments before intercourse.

rides in his car several times. He recounted in detail a journey with the woman in September, 1982, to a restaurant, the Lodge, in Salem, New Hampshire, which wound up with consensual intercourse in his car parked on a boat ramp in Lawrence. All this of course was probative on the issue of consent.

At the close of the defendant's case, the prosecutor indicated that he wished to recall the woman. Defense counsel quite properly asked what this rebuttal would cover, and was told that it would consist of the woman's denials of the testimony just described of Pelletier and the defendant. Over the defendant's objection that this would be simply repetitive of the woman's prior testimony, and was calculated to create unfair sympathy in her favor, the judge allowed the rebuttal. It consisted of four pages of testimony by the woman in which she said she did not recall what she had said to Pelletier, and denied the defendant's story about the dating and more particularly his story about the Lodge and sequelae. The judge was not mistaken. Rebuttal introducing a new subject (especially when the opposing party may be caught unprepared to meet it) is open to objection. Rebuttal is legitimate when it responds to the opponent's case; in this circumstance, at any rate, the judge, as the controller of the trial, has a nearly unreversible discretion to allow it. See Liacos, Massachusetts Evidence 64 (5th ed. 1981). In the present case there was perhaps more to be said for allowing the testimony denying the circumstantial account by the defendant, than for permitting it in respect to Pelletier; but we do not doubt that the judge acted within a reasonable discretion in receiving both.

*Judgment affirmed.*

*Carol A. Donovan,* Committee for Public Counsel Services, for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.