COMMONWEALTH *vs.* LOUIS P. SIANO.

Hampden.    March 9, 1976. — April 13, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Evidence,* Opinion: expert.    *Witness,* Expert.

At the trial of a defendant for making a false insurance claim after a fire, the judge did not err in admitting expert testimony of an investigator from the State Fire Marshal's office based on his observations made two days after the fire. [248]

At the trial of an indictment charging the defendant with making a false insurance claim, there was no merit to the defendant's contention that an investigator from the State Fire Marshal's office was incompetent to testify with respect to the composition of debris remaining at the scene of a fire, and that his testimony was inadmissible as an opinion on the ultimate issue before the jury. [248-249]

---

At the trial of a defendant for making a false claim to an insurance
company after a fire destroyed his garage, the judge did not err in
permitting an expert on lumber and building materials to testify to
the amount of space which would have been required to house cer-
tain material which the defendant claimed was in the garage. [249]

INDICTMENT found and returned in the Superior Court
on January 11, 1973.

The case was tried before *Kent B. Smith,* J.

*Efrem A. Gordon* for the defendant.

*L. Jeffrey Meehan (John T. McDonough,* Special As-
sistant District Attorney, with him) for the Common-
wealth.

HALE, C.J.    This case is before us on the defendant's
bill of exceptions. The defendant was convicted by a Su-
perior Court jury of making a false claim to an insurance
company (G. L. c. 266, § 111A) and was sentenced. The
evidence summarized below is taken from the bill of excep-
tions. There was no error.

About 2:00 P.M. on July 3, 1972, there was an explosion
in a two-car garage owned by the defendant and his
mother. The force of the explosion shattered windows in
a building two blocks away and propelled objects from the
garage across the adjacent street. A fire which engulfed
the garage took fire fighters approximately fifteen minutes
to bring under control and forty-five minutes to extinguish.
Immediately following the fire there were no observable
remains of anything more than small quantities of alumi-
num siding, steel pipe staging, or plywood in the debris. The
defendant filed a proof of loss with the insurance company
which had issued a policy covering loss by fire of the build-
ing and its contents, claiming the loss of one hundred and
fifty sheets of three-quarter inch plywood, fifty sheets of
birch finish plywood (all the plywood was four feet
by eight feet in size), metal pipe staging and twenty
"squares"[1] of aluminum siding.

Detective Lieutenant Sibley of the State Fire Marshal's

---

[1] A "square" is 100 square feet.

office conducted an investigation at the scene of the fire on July 5 to determine its cause. The observations he described in court corresponded closely to those which had been made by previous witnesses, including firemen and policemen who had been present at the time of the fire. He also saw four or five pieces of white aluminum siding but no melted aluminum. He observed nothing among the remains which could be identified as the residue of 150 sheets of three-quarter inch plywood.

He also testified, subject to the defendant's exception, that birch finish plywood is "finished" and "not rough" and that he had not found anything in the remains which appeared to be the residue of fifty sheets of such plywood. Nor had he found anything which in his opinion could have been the residue of twenty squares of aluminum siding.

Sibley was also permitted to testify, subject to the defendant's exceptions, that after such a fire he would have expected to find a "very noticeable" amount of plywood in the debris. He testified that he would compare a stack of plywood to a stack of closely packed newspapers; that, when burned, the residue of the plywood, like that of newspapers, would be a pile in the same form that it had been originally with the outer portions of the pile in ashes and the center unburned, and that he had observed no such remains at the scene.[2]

The defendant contends that Lieutenant Sibley's testimony was based on observations made two days after the fire and that the "observed data ... were insufficient to give rise to an expert opinion." The judge had heard the testimony of the witnesses who had observed the scene immediately after the fire. He could have found that the scene did not change materially from the time immediately after the fire until Lieutenant Sibley observed it. Sibley's own observations thus formed a proper basis for the admis-

---

[2] The witness had already given the same testimony that he had not observed a residue of such plywood without any exception having been taken to that testimony.

sion of his testimony. See *Commonwealth* v. *Harris,* 1 Mass. App. Ct. 265, 266-267 (1973), *S.C.* 364 Mass. 236 (1973). See also *Melvin* v. *H. J. Nassar Motor Co. Inc.* 355 Mass. 692, 693 (1969).

The defendant offers three further bases for his contention that Sibley's testimony was improperly admitted. We discuss them separately.

(1) The defendant argues that Sibley's "professional competence" (which we take to mean expertise) was insufficient to allow him to testify to the opinions summarized above. "The conclusion of the trial judge that a witness is competent to express an opinion upon a particular matter can be disturbed only where there is no evidence to warrant that conclusion." *Commonwealth* v. *Bellino,* 320 Mass. 635, 638 (1947), cert. den. 330 U. S. 832 (1946). There was evidence that during his career Sibley had investigated 178 fires, fifteen or twenty of which had involved garages and four or five of which had involved the burning of lumber, and that he had seen plywood burning and had observed its residue. "A witness's training and experience may well qualify him to give an opinion in reference to a problem which he has never before encountered in precisely the same form." *Commonwealth* v. *Bellino,* 320 Mass. at 638. Inconsistencies in the expert's testimony and infirmities in his knowledge and skill, developed during the course of cross-examination, affect only the weight of such testimony. *Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 223 (1974).

(2) The defendant contends that Sibley's testimony with respect to the lack of residue from the plywood and aluminum siding was inadmissible, as the nature of the remains of the fire was a matter to be determined by the jury unassisted by expert testimony. While Sibley's opinion testimony concerning the probable residues after the fire did not require any great degree of expertise, we cannot say that the average juror would possess the knowledge required to make the determination. We believe that such testimony could have aided the jury in their deliberation, and that such testimony was admissible for that pur-

pose. *Lovasco* v. *Parkhurst Marine Ry.* 322 Mass. 64, 67 (1947). *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 591-592 (1956). *Commonwealth* v. *Harris,* 1 Mass. App. Ct. at 268. Similarly, there was no error in admitting testimony concerning the appearance of birch finish plywood.

(3) The defendant argues that Sibley's testimony should have been excluded as it was an opinion on the ultimate issue. We noted in *Commonwealth* v. *Harris,* 1 Mass. App. Ct. at 271, citing *Commonwealth* v. *Montmeny,* 360 Mass. 526, 527-528 (1971), "that a question which calls for an opinion which is in the domain of the expert's professional knowledge is not necessarily to be excluded merely because the conclusion of the witness reaches or approaches the ultimate issue before the jury," and we observed "[i]t is doubtless also true that a trial judge should exercise caution with respect to such opinions because of the danger that the jury might abdicate its independent judgment." In any event "this is not a valid objection where the judge could find that the witness was qualified to express an opinion in the domain of professional knowledge which would be of assistance to the jury." *Commonwealth* v. *Chapin,* 333 Mass. 610, 625, cert. den. 352 U. S. 857 (1956). See *Commonwealth* v. *Van Kooiman,* 353 Mass. 759 (1967). Contrast *Commonwealth* v. *Gardner,* 350 Mass. 664, 665-667 (1966).

The defendant has also excepted to permitting an expert on lumber and building materials to testify to the amount of space twenty squares of aluminum siding would have occupied. It would appear that the dimensions of such materials and their volume were within the witness's expert knowledge. The implication in the question that the material would be stacked together rather than strewn about would go to the weight of the testimony and not to its admissibility. The defendant cannot now complain that the question put to the witness was not answered responsively, as it does not appear that any motion was made to strike the answer.

Finally, contrary to the claim of the defendant, there was no error in denying the motion for a directed verdict

as the bill of exceptions reveals sufficient evidence which, if believed by the jury, would warrant the verdict of guilty.

*Exceptions overruled.*